Jeffrey A. Thomson
Matthew C. Parks
ELAM & BURKE, P.A.
251 E. Front St., Ste. 300
P.O. Box 1539
Boise, Idaho 83701
Telephone: (208) 343-5454
Facsimile: (208) 384-5844
jat@elamburke.com
ISB #3380
mcp@elamburke.com
ISB #7419

Attorneys for Defendant

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, <br><br>         Plaintiff, <br><br>   vs. <br><br> HOLLAND REALTY, INC. <br><br>         Defendant. | Case No.  07-CV-00390 <br><br> RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FILED ON NOVEMBER 16, 2007[1] |

---

[1] In a previous motion, Holland requested that all summary judgment proceedings be postponed in order to allow Holland to conduct discovery into factual matters in dispute between the parties.  (Motion for Rule 56(f) Continuance to Allow for Discovery) Before this Court considers St. Paul's motion for summary judgment, Holland should be allowed to conduct discovery into the following matters before any summary judgment determinations are made by this Court: (1) the nature of the damages sought by the Bloughs in the underlying litigation; (2) the scope of the antitrust exclusion in the insurance policy; and (3) whether or not the terms of the reservation of rights letter either modified the contract or created an implied agreement conferring upon St. Paul the right to reimbursement, a right not contained in the insurance contract.

TABLE OF CONTENTS

I.  SUMMARY OF THE ARGUMENT AGAINST SUMMARY JUDGMENT. . . . . . . . . . . . . 1

II. LEGAL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.  Duty to Defend Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  Complaint Reveals Potential for Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.  Holland Met the Prerequisites of Coverage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.  Policy Exclusions Do Not Apply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.  Damages sought by Bloughs are not the result of commissions or fees. . . . . . . . . . . 7

            (a) Violations of the ICPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                (i)     Increased costs or taxes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                (ii)    Attorney Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                (iii)   ICPA provides remedy for "ascertainable loss.". . . . . . . . . . . . . . . . . . 11

            (b) Violations of the real estate ethics code. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            (c) Exclusion for loss that results from fees or commissions is ambiguous. . . . . . . 13

        2.  Exclusion for claims alleging violations of antitrust laws
           does not apply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            (a) Exclusion covering antitrust violations was modified. . . . . . . . . . . . . . . . . . 13

    D.  The Policy Requires St. Paul to Provide a Defense. . . . . . . . . . . . . . . . . . . . . . . . . . 14

    E.  Reimbursement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1.  There is no contract right to reimbursement; a reservation of rights letter
           can only preserve rights found in the insurance policy. . . . . . . . . . . . . . . . . . . . 15
        2.  St. Paul confuses coverage under the policy with the duty to defend. . . . . . . . . . . . 17
        3.  The terms of the reservation of rights letter are contradictory and ambiguous. . . . . . 18

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. SUMMARY OF THE ARGUMENT AGAINST SUMMARY JUDGMENT

The alleged acts forming the basis of the claims made in the Blough Litigation resulted from professional real estate services Holland Realty, Inc. ("Holland") provided.  Consequently, according to the insurance policy, St. Paul Fire & Marine Insurance Company ("St. Paul") has a duty to defend and indemnify Holland.

St. Paul argues that the duties to defend and indemnify are extinguished by two exclusions in the policy.  The first excludes coverage for damages resulting from fees or commissions.  The second excludes coverage for claims made pursuant to certain trade laws not including the Idaho Consumer Protection Act ("ICPA").  St. Paul also argues that it has a right to reimbursement for all defense costs paid if it is eventually determined that no duty to defend had been triggered.

As demonstrated below, there are genuine issues of material fact over (1) whether or not the damages sought by the Bloughs from Holland are potentially the "result" of fees and/or commissions; (2) whether or not claims under the ICPA are potentially covered under the policy; and (3) whether or not St. Paul is entitled to reimbursement of defense costs under its reservation of rights letter, which unilaterally attempts to modify the insurance agreement.  In fact, there is no right to reimbursement as a matter of law.

The ICPA claim against Holland falls within the scope of coverage of the policy issued by St. Paul.  Holland met the coverage prerequisites and performed its duties required under the terms of the contract.  Holland alerted St. Paul to the complaint filed in the Blough Litigation and requested a defense under the terms of the policy.  (Affidavit of Cindy H. Schultz ("Schultz Aff."), ¶¶ 7-9.)  St. Paul argues in its motion for summary judgment that certain exclusions apply,

and Holland is not owed a duty to defend or indemnify.  Because the only claim that remains in litigation is the alleged violation of the ICPA,[2] Holland's arguments focus on the applicability of the coverage exclusions to that claim.

There is coverage as a matter of law.  If not, there at least are genuine issues of material fact concerning the nature of the damages sought in the underlying complaint, as well as the modification of the insurance policy that broadened coverage of the policy to include claims made under the ICPA.  Under either scenario, summary judgment is not appropriate.

St. Paul misstates the law with respect to the duty to defend.  St. Paul argues that a finding by this Court that there is no coverage under the policy would mean there was no duty to defend Holland in the Blough Litigation.  That is incorrect.  The duty to defend is triggered when the complaint against the insured reveals a <u>potential</u> for liability.  At the time St. Paul agreed to defend the claims, there was a <u>potential</u> for liability.

Even if this Court determines that the insurance policy does not cover the remaining claims, this only extinguishes St. Paul's duty to indemnify and the duty to defend going forward. However, St. Paul's duty to defend up to the date of that decision is not retroactively extinguished as long as there was even a potential for liability under any of the claims.  Holland contends that there was, and still is, a duty to defend the claims made in the Blough Litigation.

St. Paul seeks reimbursement for all defense costs incurred since August of 2005.  The policy confers no such right.  St. Paul argues that its reservation of rights letter conferred upon it

---

[2] On November 30, 2007, Judge Winmill granted Holland's motion for summary judgment and dismissed all causes of action in the Blough Litigation except for the alleged violation of the ICPA.  *Curtis and Gwendolyn Blough, v. Holland Realty, Inc.*, Case No. CV-06-059-S-BLW (D. Idaho Nov. 30, 2007) (Memorandum Decision and Order) (copy attached).

RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT FILED ON NOVEMBER 16, 2007 - 2

the right to be reimbursed if it was subsequently determined that the claims were not covered under the policy.  In Idaho, a reservation of rights letter only serves to preserve the rights that exist under the contract.  Because the insurance contract has no such right to reimbursement, St. Paul cannot, by law, seek reimbursement regardless of the terms of the reservation of rights letter.

## II.  LEGAL STANDARDS

### A.    Summary Judgment Standard.

St. Paul bears the burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  The evidence should be weighed in the light most favorable to Holland, and all reasonable inferences must be known in Holland's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.    Duty to Defend Standard.

"The duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy." *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371-72, 48 P.3d 1256, 1260-61 (2002) (emphasis added).  "If a complaint alleges facts which, if true, create a potential liability within coverage of a liability insurance policy, the insurer has an initial duty to defend."  *Standlee v. St. Paul Fire & Marine Insurance Co.*, 107 Idaho 899, 901, 693 P.2d 1101, 1103 (Ct. App. 1984). Once it is concluded that an insurer owes its insured a duty to defend, the duty to defend and pay defense costs continues until such time as the insurer can show that the claim against the insured cannot be said to fall within the policy's scope of coverage.  *Kootenai County v. Western Cas. and Sur. Co.*, 113 Idaho 908, 911, 750 P.2d 87, 90 (1988).  As long as the ICPA claim or any of

the dismissed claims raised the potential for liability for damages that would be covered under the policy, St. Paul had, and has, a duty to defend Holland.  Potential liability cannot be retroactively extinguished.  *See Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998); *see also Buss v. Superior Court of L.A. County*, 939 P.2d 766, 773 (Cal. 1997) (duty to defend "is extinguished only prospectively and not retroactively; before the insured had a duty to defend; after, it does not have a duty to defend further").  Those holdings are consistent with the law in Idaho.  St. Paul fails to cite to a  single Idaho case that holds a coverage determination that can erase the potential for liability that existed prior to that determination. That is because, in Idaho, coverage determinations do not retroactively extinguish the duty to defend.  *See Western Community Ins. Co., v. Precision Craft, Inc.*, Case No. CV OC 0508679, slip op. (Idaho 4th Dist. Nov. 7, 2006) (Memorandum Decision and Order) (copy attached):

> [I]nsurance companies have a duty to defend cases that are potentially covered by an insurance policy until they can have a declaratory judgment that the claims are not within the coverage period. The duty to indemnify has been extinguished and a further duty to defend has been extinguished as well.  However, the duty to defend the case prior to the declaratory judgment has not been retroactively extinguished.

(emphasis added).

## III.  ANALYSIS

Beyond there being a potential for liability, in this case there is actual coverage for the remaining claim because Holland clearly meets the prerequisites for coverage; the exclusion for anti-trust violations does not apply to the remaining ICPA claim against Holland, and the Bloughs are seeking damages that do not fall within the purview of the exclusion of claims for damages resulting from fees or commissions.  Accordingly, St. Paul must provide a defense and

indemnity for any covered damages assessed against Holland and St. Paul's summary judgment motion should be denied.

**A.      Complaint Reveals Potential for Liability.**

A complaint against an insured need only demonstrate, in part, a potential for liability. *Hoyle*, 137 Idaho at 371-72, 48 P.3d at 1260-61; *see also Perdue Farms, Inc. v. Travelers Casualty and Surety Co. Of Amer.*, 448 F.3d 252, 258 (4th Cir. 2006) ("if an insurance policy covers <u>any</u> claim in an underlying complaint, the insurer . . . must typically defend the <u>entire</u> suit") (emphasis added).  The language in St. Paul's reservation of rights letter demonstrates the allegations in the  Bloughs' complaint created a potential for coverage.  The letter reads that, "There *may be* no covered loss under the policy . . . .  There *may be* no loss that resulted from 'real estate or professional services' . . . .  Some or all of the amounts sought *may not* constitute damages as defined in the policy."  (Schultz Aff., Ex., 1, p.8 (emphasis added).)  The reservation of rights letter reveals an uncertainty concerning the damages sought by the Bloughs and whether such damages would potentially be covered under the policy.  Therefore, St. Paul had a duty to defend the claims.  Because the potential for liability is still extant, the duty to defend still exists.  Even if the claim is eventually found to be beyond the pale of the policy's protection, the duty to defend would not be retroactively extinguished because the potential for liability existed at the time the complaint was filed, even according to St. Paul and its reservation of rights letter.

**B.      Holland Met the Prerequisites of Coverage.**

St. Paul agreed to provide coverage for the following:

> **Real estate professional services liability**.  We'll pay amounts any protected person is legally required to pay as damages for covered loss that:

- results from real estate professional services by or for you
- is caused by a wrongful act committed on or after the retroactive date and before the ending date of this agreement; and
- results in a claim or suit made or brought against a protected person and reported to us while this agreement is in effect, or during the limited reporting period or the extended reporting period, if either one applies.

Real estate professional services means those services that were, or should have been, performed for others in the capacity of a notary public, or any of the following if shown in the Coverage Summary:

. . . .
- Property manager
- Real estate agent or broker

. . . .

(Affidavit of Matthew C. Parks in Support of Defendant's Opposition to Summary Judgment

("Parks Aff."), Ex. 1., p. 25.)

The policy defines damages as "compensatory damages imposed by law." (*Id.* at 27.)

Holland's acts in the capacity of a real estate agent or broker led to the complaint filed by the

Bloughs, who alleged that Holland provided them with real estate services. The Bloughs alleged

that Holland committed a wrongful act during the policy period related to those real estate

services. (*Id.*, Ex. 2, ¶ 55.) To remedy those wrongful acts, the Bloughs requested compensatory

damages. (*Id.*, Ex. 2, ¶ 56.) There is no dispute that there is coverage under the insuring language

of the policy.

Regardless of the insuring language or the exclusions relied on by St. Paul, the policy

expressly requires St. Paul to defend against the allegations of the Bloughs' complaint. The

policy excludes "loss that results from criminal, dishonest, or fraudulent, wrongful acts or any

knowing violation of rights or laws . . . ."  (Parks Aff., Ex. 1 p. 33.)  Nevertheless, the policy requires a defense to any such allegations:  "[St. Paul] <u>won't apply this exclusion to our duty to defend . . . until it has been determined . . . that such criminal, dishonest, or fraudulent wrongful act or such knowing violation of rights or laws was committed."  (*Id*.)

The Bloughs' complaint alleges that Holland committed knowing violations of rights or laws.  The Bloughs alleged that Holland knowingly violated the Sherman Act and the Idaho Competition Act.  While these knowing violations, if ultimately proved, may not be indemnified based on the exclusion, St. Paul agreed to provide Holland a defense against these allegations until a determination was made through the legal process that such an act was committed.  There has been no such determination concerning alleged violations of the ICPA.  St. Paul had, and still has, a duty to defend Holland.

**C.     Policy Exclusions Do Not Apply.**

To bypass the insuring language, St. Paul argues that two exclusions apply:  (1) the fees or commissions exclusion; and (2) the anti-trust law exclusion.  (Plaintiff's Motion for Summary Judgment, ¶ 6.)  Neither exclusion applies to defeat coverage or the duty to defend regarding the remaining ICPA claim.

1.     <u>Damages sought by Bloughs are not the result of commissions or fees.</u>

St. Paul argues that Holland's policy excludes coverage for claims seeking damages resulting from fees and commissions.  The policy exclusion reads:

> **Fees, deposits or commissions.**  We won't cover loss that results from fees, deposits, commissions or other charges for your real estate professional services.

(Parks Aff., Ex. 1, p. 33.)  St. Paul mischaracterizes the claims made by the Bloughs by arguing

that all of the allegations are based on "conduct in charging and collecting commissions."

(Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's

Memo."), p. 4.)  That is not what the Bloughs alleged in their ICPA claim; instead they broadly

alleged that Holland violated the ICPA by "the advertising of goods or services with intent not to

sell them as advertised and engaging in any act or practice which is otherwise misleading, false,

and/or deceptive to the consumer."  (Parks Aff., Ex. 2, ¶ 55.)  Characterizing the Blough

Litigation as being predicated only on conduct in charging commissions improperly narrows the

Bloughs' allegations.  These are not alleged losses resulting from real estate fees or commissions.

These are losses arising from allegations of misleading, false or deceptive advertising.  The

exclusion does not apply to defeat coverage.  At a minimum, it creates a potential for liability

requiring a defense.

 In the underlying complaint against Holland, the plaintiffs also allege they are seeking

unspecified "damages to be established at trial" with respect to claims made pursuant to the

ICPA.  (Affidavit of Christopher Bannon ("Bannon Aff."), Ex. 1-B, ¶ 103; Ex. 1-C, ¶ 55.) The

Bloughs do not relate these "damages to be established at trial" to fees or commissions.  The

damages are not defined at all.  They are not specified or characterized in any manner.  This lack

of specificity takes these allegations out of this exclusion and creates at least a potential for

liability.  Hence, St. Paul has a duty to defend.

 St. Paul further acknowledges that the Bloughs allege that, "the inflated cost of the house

also resulted in <u>additional</u> damages by increasing the costs of items such as taxes, loan

origination fees, insurance, and other cost based items." (Plaintiff's Rule 7.1(b)(1) Statement of

Facts, p.6, ¶ 19 (emphasis added).)  The Bloughs are not seeking merely a "return of fees" but are

seeking separate and distinct damages.  To say that the Bloughs are seeking only the "return of fees" ignores the <u>additional</u> damages described above, their claims for relief under the ICPA, and their claims that Holland violated the National Association of Realtors Code of Ethics. (Parks Aff., Ex. 1 ¶ 34.)

The Bloughs have alleged damages other than fees, deposits, or commissions.  These allegations triggered St. Paul's duty to defend.  There is at least a genuine issue of material fact concerning the character of the damages sought by the Bloughs.  That uncertainty precludes summary judgment because it demonstrates a potential for liability under the insurance policy.

(a)     <u>Violations of the ICPA</u>.

(i)     <u>Increased costs or taxes</u>.

Courts have determined that increased taxes are compensatory damages caused by violations of consumer protection laws aimed at stemming deceptive advertising.  *See Laster, et al. v. T-Mobil USA, Inc.*, et al., 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005) (finding that charging for sales tax on so called free phones could be considered "actual injury" being suffered by members of class).  The situation before this Court is similar.  The Bloughs have alleged that they have suffered an ascertainable loss because they have been forced to pay additional taxes on their home, higher insurance payments, and other expenses due to the false or misleading advertising of Holland.  These alleged damages take this case out of the ambit of the fees and commissions exclusion and lead to actual coverage or, at least, a potential for liability covered by the policy.

(ii)     <u>Attorney Fees</u>.

The Bloughs also seek their attorney fees due to the violations of the ICPA.  Before the

RESPA claim was dismissed, the Bloughs sought attorney fees under that statute as well.  These are separate and distinct compensatory damages that are not the result of fees or commissions.

In *Pacific Ins. Co. v. Burnett Title, Inc.*, 380 F. 3d 1061 (8th Cir. 2004), the court considered whether or not attorney fees would be considered compensatory damages sought by a plaintiff thereby triggering a duty to defend the claim despite the existence of an exclusion for the return of fees for professional services as damages under the policy.  *Id.* at 1066 ("the fighting issue between the parties is whether the prayer for attorney fees constitutes 'damages' within the meaning of the policy.").  The plaintiffs in *Burnett* sought to be reimbursed for the closing costs and fees they were charged, a hidden charge that was alleged to be in violation of RESPA.  *Id.* at 1063.  The Court held the request for attorney fees was a request for compensatory damages that did not fall within the fees or commissions exclusion.  *Id.* at 1066.  The *Burnett* Court reasoned that, based on the language of RESPA, wherein costs and attorney fees are differentiated, attorney fees are separate, compensatory damages.  *Id.*[3]  Consequently, the court concluded that the request for attorney fees was a request for compensatory damages.  *Id.*

Like RESPA and ERISA, the ICPA makes attorney fees a separate damage.

> Costs shall be allowed to the prevailing party unless the court otherwise directs.  In any action brought by a person under this section, the court shall award, in addition to the relief provided in this section, reasonable attorney's fees to the plaintiff if he prevails.  The court in its discretion may award attorney's fees to a prevailing defendant if it finds that the plaintiff's action is spurious or brought

---

[3]The *Burnett* Court also pointed to other cases that have made such a distinction when analyzing the question under ERISA.  *Id.* (citing *Sokolowski v. Aetna Life & Cas. Co.*, 670 F. Supp. 1199, 1208-10 (S.D.N.Y. 1987) (holding that in claims brought pursuant to ERISA, a request for attorney fees constituted a request for compensatory damages under an insurance policy).

for harassment purposes only.

I.C. § 48-608 (4).  Consequently, the request for attorney fees under either the now dismissed

RESPA claim or the existing ICPA claim is a compensable damage not resulting from fees or

commissions under the exclusion.

(iii)    ICPA provides remedy for "ascertainable loss."

The ICPA is not simply a mechanism for the return of any ill gotten fees or commissions.

It authorizes  attorney fees and other equitable relief.  I.C. § 48-608 & 607(7).  Damages under

the ICPA are "amorphous."  *See In re Wiggins*, 273 B.R. 839, 855 (Bankr. D. Idaho 2001) (citing

*In re Western Acceptance Corp., Inc.*, 117 Idaho 399, 788 P.2d 214, 216 (1990) & I.C. § 48-608).

> "Ascertainable loss" is defined under the Idaho Rules of Consumer
> Protection to include the following:  "[a]ny deprivation, detriment,
> or injury, or any decrease in amount, magnitude, or degree that is
> capable of being discovered, observed, or established."  IDAPA
> 04.02.01.020.05.  Other courts have described it in the same manner.
> *See, e.g., Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 13
> P.3d 1044, 1050 (2000) (describing "ascertainable loss" as
> "amorphous;" "[a]ny loss will satisfy that requirement so long as it is
> 'capable of being discovered, observed, or established' " (citation
> omitted)); *Criscuolo v. Shaheen*, 46 Conn. Supp. 53, 736 A.2d 947,
> 953 (1999) (same).  Another court has described it as any "real,
> tangible out-of-pocket expense."  *Lennon v. Wyeth-Ayerst
> Laboratories, Inc.*, 2001 WL 755944, (Pa. Super., 2001).

*Id.* at 856-857.

The Bloughs alleged practices apart from the charging of fees and commissions that

formed the basis of their allegation that Holland violated the ICPA.  The Bloughs allege that

Holland made misrepresentations when marketing/advertising its product.[4]  *See St. Paul Fire and*

---

[4]Holland denies these allegations.

*Marine Ins. Co. v. Aspen Realty, Inc.*, 2006 WL 4005573, *5 (D. Idaho, December 27, 2006),

judgment amended 2007 WL 2682107 (July 27, 2007) (finding that when real estate agent

misrepresented what they were selling to prospective buyers, a subsequent lawsuit by the buyer

would <u>not</u> be considered as resulting from the payment of commissions).  St. Paul points out the

similar factual make-up of the instant case and *Aspen*; however, St. Paul fails inform the Court

that no ICPA claim was at issue in *Aspen*.[5]

    The underlying complaint against an insured need only demonstrate the potential for

liability.  *Hoyle*, 48 P.3d at 1260.  The request by the Bloughs for damages relating to additional

taxes, other increased costs, and their attorney fees under both RESPA and ICPA, and other

unspecified relief reveals a potential for liability within the four corners of the complaint and,

therefore, triggers the duty to defend.  Given the amorphous nature of damages available under

the ICPA, there is a potential for liability until such time as St. Paul can prove the exact nature of

the damages being sought by the Bloughs, something it has not yet done.

    (b)    <u>Violations of the real estate ethics code</u>.

    The Bloughs also allege that the actions of Holland constitute a violation of the

National Realtors Association's Code of Ethics, specifically that Holland misrepresented or

failed to disclose facts pertinent to the property.  (Parks. Aff., Ex. 2, ¶ 34.)  These contentions are

further evidence that the claims are not based solely on the collection of fees, thereby raising the

potential for liability.  The Bloughs sought damages for these ethical violations.  (*Id*., Ex. 2, p.

---

[5]Although the underlying complaint in *Aspen* originally contained allegations of
violations of the ICPA, by the time the insurer moved for summary judgment, the claims under
the ICPA had already been dismissed.

RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT FILED ON NOVEMBER 16, 2007 - 12

16, ¶ 10.)  Whether or not this claim has any merit would not affect the duty to defend.  St. Paul agreed to defend against any claim, "even if any of the allegations of such claim are groundless." ( *Id.*, Ex. 1, p. 27.)

> (c)  <u>Exclusion for loss that results from fees or commissions is ambiguous</u>.

The policy does not define what is meant by "results from."  In *St. Paul Fire & Marine Insurance Co. v. Land Title Services, Inc.*, 486 F. Supp. 2d 745, 746 (E.D. Wis. 2007), St. Paul moved for a declaratory judgment that it owed no duty to defend under a professional services insurance policy.  Plaintiffs brought the underlying claim against St. Paul's insured and sought damages for breach of contract based on the collection of unearned fees charged for recording the satisfaction of liens.  *Id.*   According to the underlying complaint, Land Title charged for this service but never actually provided it.  *Id.*  St. Paul provided a defense of the suit with a reservation of rights and moved for a declaratory judgment based on the exclusion of coverage for "loss that results from fees, deposits, commissions and other charges for real estate professional services."  *Id.* at 750.  The court stated, "[h]ow a loss can be said to 'result' from a fee is not readily apparent." The same result should obtain here.  Since the exclusion is ambiguous, it should be construed against St. Paul, and summary judgment should be denied.

> 2.  <u>Exclusion for claims alleging violations of antitrust laws does not apply</u>.

> (a)  <u>Exclusion covering antitrust violations was modified</u>.

St. Paul argues that the exclusion applying to violations of antitrust laws extinguishes the duty to defend.  However, the exclusion was modified and, by its own terms, was broadened to provide coverage for allegations of violations under the ICPA.  That exclusion originally read:

> **Violation of Trade or Consumer Protection Laws.**  We won't

> cover loss that results from any actual or alleged violation of any securities, anti-trust, restraint of trade, <u>unfair or deceptive trade practices, unfair competition, or other consumer protection law</u>.

(Bannon Aff., Ex 1-A, p 47 of 53; Parks Aff, Ex. 1, p. 35) (emphasis added).) Before the Bloughs brought suit, the exclusion was modified.  The exclusion, as modified, clearly does not cover violations of the ICPA.  The modification to the applicable policy reads:

> The following replaces the violation of trade or consumer protection exclusion.
>
> <u>This change broadens coverage</u>.
>
> Violation of trade laws.  We won't cover loss that results from any actual or alleged violation of any securities, anti-trust, or restraint of trade laws.

(Bannon Aff., Ex 1-A at p. 51 of 53; Parks Aff. Ex. 1, p. 39 (underscored emphasis added).)

The modification expressly "broadens coverage" and drops all reference to "unfair or deceptive trade practices, unfair competition, or other consumer protection law."  Despite this, St. Paul argues that the exclusion operates to exclude coverage for all claims, including claims made under the Idaho <u>Consumer Protection</u> Act.  The terms of the modified contract unambiguously establish coverage for the ICPA claims.  If not, at a minimum the language is ambiguous.  Under either situation, St. Paul's motion for summary judgment should be denied.

The motion for summary judgment on the duty to defend should be denied because there is either a potential for liability or there is a genuine issue of fact over whether either policy exclusion cited by St. Paul extinguishes the duty to defend.

**D.    The Policy Requires St. Paul to Provide a Defense .**

St. Paul agreed to defend Holland under the following terms:

> **Right and duty to defend a protected person**. We'll have the
> right and duty to defend any protected person against any claim
> made or suit brought for covered losses.

(*Id*. at p. 27.)

## E.      Reimbursement.

St. Paul argues that Holland must reimburse St. Paul for the already paid costs of the

defense if the Court finds that there is no further duty to defend or duty indemnify under the

policy. That request should be denied because (1) in Idaho, insurers are not entitled to be

reimbursed for any costs or fees incurred prior to a declaratory judgment on coverage if the

insurance policy itself contains no right to reimbursement; (2) St. Paul mistakenly equates

coverage under the policy with the duty to defend; and (3) the terms of the reservation of rights

letter are ambiguous and contradictory.

      1.      <u>There is no contract right to reimbursement; a reservation of rights letter can only
preserve rights found in the insurance policy</u>.

Idaho law on the subject is unequivocal: an insurer cannot use a reservation of rights

letter to create rights it does not have under the insurance contract. *Mutual of Enumclaw v.*

*Harvey*, 772 P.2d 216, 220 (1989) (holding that reservation of rights letter does not create new

rights but, rather, "preserves that to which the parties had originally agreed"). To hold otherwise

would enable the insurer to unilaterally modify the insurance contract. According to *Mutual of*

*Enumclaw*, a reservation of rights letter can only preserve what is stated in the contract. *Id. See*

*also Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510, 515-16 (Wyo. 2000)

(finding that because the contract contained no right of reimbursement, the insurer could not alter

or amend the insurance policy via a reservation of rights to create such a right).

St. Paul could have included a right to reimbursement in the contract, but they failed to do so.  The contract between Holland and St. Paul states that the **only** expense that would be collected from Holland would be the deductible: "[t]he deductible shown in the coverage Summary and the information contained in this section <u>fix the amount of damages and defense expenses that you'll be responsible for paying</u> . . . ."  (Parks Aff., Ex 1, p. 37.)  By the terms of the policy, no reimbursement for defense costs is allowed.  The amount that Holland would be required to pay is fixed at its deductible.  St. Paul included a right to be reimbursed for the deductible, and it could have included a right of reimbursement for defense costs.  (*Id*.)  ("If we settle a claim . . . we'll pay the deductible . . . .  You agree to repay us the deductible amount . . . .")  St. Paul chose not to include any right to recoup defense costs in the contract it drafted.

St. Paul cannot reserve a right that was never granted by the contract negotiated with Holland.  In *General Agents Ins. Co. of Amer. v. Midwest Sporting Goods Co.*, 828 N.E. 2d 1092 (Ill. 2005), the Illinois Supreme Court found that, because the insurance policy did not provide for reimbursement of defense costs, the insurer's "attempt to expand its reservation of right to include the right to reimbursement must fail."  *Id.* at 1103.  Like Idaho, Illinois holds that insurers cannot create rights not found in the contract via a reservation of rights letter.  *Id*.

The Illinois Supreme Court found it violated public policy to "condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend."  *Id.* at 1102.  The Court "recognized that courts have found an implied agreement where the insured accepts the insurer's payment of defense costs despite the insurer's reservation of a

right to reimbursement of defense costs." *Id.* However, the Court declined to adopt that line of reasoning, finding that such a situation presents an insured with a "Hobson's choice between accepting the insurer's additional conditions on its defense or losing its right to a defense from the insurer." *Id.* Idaho has, in essence, adopted the logic expressed eloquently by the Illinois Supreme Court, as Idaho also adheres to the holding that an insurer's "reservation of rights could only retain those defenses [it] had under its policy." *Id.* at 1103 (citation omitted); *accord Enumclaw*, 772 P.2d at 220 ; *see also Country Ins. Co. v. Agricultural Dev., Inc.*, 107 Idaho 961, 971, 695 P.2d 346, 356 (1985) (finding that these kinds of situations place an insured on the "horns of a dilemma").

      2.     <u>St. Paul confuses coverage under the policy with the duty to defend.</u>

St. Paul argues that once the coverage determination is made, then the duty to defend never existed. As stated above, that contention misstates the law. St. Paul argues that courts have found insurers were entitled to reimbursement for defense costs paid in defending claims that the insurer "was not obligated under its policy to defend." (Plaintiff's Memo., p.14.) However, St. Paul had an obligation to pay for the defense because of the *potential* for coverage for the ICPA and other claims. Even under the standard applied by cases relied upon by St. Paul, there would be no right to reimbursement. For instance: St. Paul relies on *SST Fitness*, which states that, "Courts in other jurisdictions have held that an insurer is entitled to reimbursement for defense costs when the insurer <u>did not have a duty to defend</u> . . . ." *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 919 (6th Cir. 2002). Because there was a potential for liability, the fact that this Court subsequently may decide that there is no actual coverage does not determine whether or not there was a duty to defend. Because there was a duty to defend, St.

Paul cannot recoup any defense costs.

      3.      <u>The terms of the reservation of rights letter are contradictory and ambiguous</u>.

St. Paul relies on its reservation of rights letter as the basis for reimbursement.  In that letter, St. Paul stated that it would pay the defense costs incurred in the defense of Holland against the Bloughs' claims until a court determined there was no duty to defend.  "St. Paul will pay the reasonable and necessary costs of the defense until such a time as a determination is made that St. Paul has no duty to defend the Litigation."  (Schultz Aff., Ex. 1, p.8.)  Holland relied on that representation by not taking control of the litigation.  Holland did not obtain independent counsel over whom they exercised control.  In fact, the firm representing Holland in the underlying litigation was selected by St. Paul and provided with St. Paul's Case Management Guidelines and Billing Procedures, evidencing St. Paul's control over retained counsel.  (*Id.*) Under these circumstances, St. Paul can not seek reimbursement.

Holland contends that even if the reservation of rights letter can create a new right of reimbursement, it is internally inconsistent and, therefore, ambiguous.  St. Paul agreed to defend Holland in the Blough Litigation "under a full and complete reservation and non-waiver of rights . . . and also specifically reserves any and all of its rights to recover from Holland any amounts it pays by way of defense, settlement, or judgment in this matter should it be determined that there is no coverage."  (*Id.*)  According to St. Paul, this created a right to reimbursement of all defense costs.  Holland disagrees.

First, the reservation of the right to recover amounts paid out for claims that are determined to fall outside of the policy's *coverage* is not a reservation of the right to recover costs incurred fulfilling the duty to defend.  If there is no coverage, there is no duty to indemnify.

For there to be a right to reimbursement for defense costs paid out under the duty to defend, the reservation language must say that the right to reimbursement is reserved should it be determined that there is no "potential" for coverage.  St. Paul did not reserve a right to be reimbursed for defense costs paid under the duty to defend.

Second, St. Paul later in the letter states that, "St. Paul will pay the reasonable and necessary costs of the defense until such time as a determination is made that St. Paul has no duty to defend the Litigation or St. Paul withdraws from the defense."  *Id*.  Here, it is clear that St. Paul is specifically evaluating its obligations under the duty to defend.  Here, St. Paul states that it will pay the defense costs but never mentions a possibility that they would seek to recover these costs.  At a minimum, the initial attempted reservation of the right of reimbursement contradicts the later agreement to pay defense costs until it is determined there is no duty to defend.  The reservation of rights letter is either ambiguous or unambiguously agrees to pay, without reimbursement, all defense costs until it is relieved of the obligation by a court.

The reservation of rights letter should be interpreted according to the maxims of insurance contract interpretation, and the ambiguity must be interpreted in favor of coverage.  *See North Pacific Ins. Co. v. Mai*, 130 Idaho 251, 255, 939 P.2d 570, 574 (1997).  Consequently, summary judgment is inappropriate.

## IV.  CONCLUSION

The only remaining claim in the underlying litigation arises out of alleged violations of the ICPA.  This claim is covered under the insurance policy and neither exclusion applies.  There is at least a genuine issue of material fact regarding the scope of coverage.

Regardless of coverage, there is either a potential for liability as a matter of law, or there

are questions of fact relating to the scope of damages alleged in the complaint and/or reservation of rights letter.

Regardless of whether there is coverage or a duty to defend, St. Paul is not entitled to be reimbursed for defense costs as a matter of law. At a minimum, there are questions of facts regarding the reservation of rights letter.

St. Paul's motion for summary judgment should be denied, and the Court is requested to declare that St. Paul: (1) has and had a duty to defend; (2) has no right to seek reimbursement for defense costs; and (3) has a duty to indemnify for the remaining ICPA claim.

DATED this __10th__ day of December, 2007.

ELAM & BURKE, P.A.


By: /s/ Jeffrey A. Thomson_____
      Jeffrey A. Thomson, of the firm
      Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the __10th__ day of December, 2007, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons via email:


Larry C. Hunter
MOFFATT, THOMAS, BARRETT, ROCK
   & FIELDS, CHTD.
P.O. Box 829
Boise, ID 83701

Christopher J. Bannon
ARONBERG, GOLDGEHN, DAVIS
   & GARMISA
330 North Wabash, Suite 3000
Chicago, IL 60611


 /s/ Jeffrey A. Thomson_____
Jeffrey A. Thomson