Larry C. Hunter, ISB No. 1989
MOFFATT, THOMAS, BARRETT, ROCK &
    FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
lch@moffatt.com
14000.222


Christopher J. Bannon
ARONBERG, GOLDGEHN, DAVIS & GARMISA
330 North Wabash Avenue, Suite 3000
Chicago, IL 60611
Telephone (312)828-9600
Facsimile (312) 222-6375
cbannon@agdglaw.com

Attorneys for Plaintiff St. Paul Fire & Marine
Insurance Company

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>vs.<br><br>HOLLAND REALTY, INC.,<br><br>      Defendant. | Civil No. 1:07-CV-00390-EJL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED ON NOVEMBER 16, 2007** |

## I. INTRODUCTION

In St. Paul's Memorandum in Support of Motion for Summary Judgment ("Memorandum"), St. Paul established that it has no duty to defend the Blough Litigation, and did not have any duty to defend from the inception of the case.[1] Two Policy exclusions – the "Commissions Exclusion" and the "Anti-trust" exclusion – clearly apply to all claims advanced against Holland. Through its Response to Plaintiff's Motion for Summary Judgment Filed on November 16, 2007 ("Response"), Holland offers no factual or legal support for a contrary finding. The court should therefore declare that St. Paul has no duty to defend or indemnify Holland for the Blough Litigation, and that St. Paul is entitled to reimbursement of expenses it paid for Holland's defense.

## II. ST. PAUL HAS NO DUTY TO DEFEND THE BLOUGH LITIGATION

### A. Duty to Defend Standard

St. Paul and Holland agree that, under Idaho law, an insurer's duty to defend does not arise unless the allegations of the underlying complaint reveal a potential for liability that would be covered under the Policy. *AMCO Ins. Co. v. Tri-Spur Inv. Co.*, 101 P.3d 226, 231 (Idaho, 2004); *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1260-61 (Idaho, 2002). Indeed, Magistrate Judge Williams of this Court recently recognized this well-established principle in finding no potential coverage for a lawsuit almost identical to the Blough Litigation. *See St. Paul Fire & Marine Ins. Co. v. Aspen Realty, Inc.*, 2006 WL 4005573, at *7 (D.Idaho, December 27, 2006), judgment modified 2007 WL 2682107 (D.Idaho, July 27, 2007).

---

[1] Terms defined in the Memorandum shall have the same meaning in this Reply.

### B. Potential Coverage Does Not Exist When Policy Exclusions Apply

The Idaho Supreme Court has also made clear that policy exclusions must be considered in determining whether a complaint's allegations reveal a potential for covered liability, and exclusions may preclude a duty to defend from a suit's inception. *AMCO*, 101 P.2d at 231 (applying exclusion for bodily injury arising out of civil rights violations); *Hoyle*, 48 P.3d at 1262 (applying fraud exclusion). Magistrate Judge Williams similarly found in *Aspen Realty* that policy exclusions applied to the allegations in the underlying case from its inception, and St. Paul had no duty to defend at any time. 2007 WL 2682107 at *3.

### C. The Fees, Deposits or Commissions Exclusion Applies

In its Memorandum, St. Paul established that the Policy's Commissions Exclusion applies to the current pleading in the Blough Litigation, and to the claims that were previously dismissed. The Blough Litigation included, from its inception, the very same claims that were alleged in the underlying case involved in *Aspen Realty*, and the court found that the identical Commissions Exclusion applied to all claims there. Holland fails to advance any reasonable argument supporting a different ruling here.

#### 1. The Type of "Damages" Sought is Irrelevant

Holland's first flawed argument with respect to the Commissions Exclusion is based on the premise that the types of "damages" the Bloughs seek somehow determines the application of this exclusion. In so arguing, Holland misreads the specific language of the exclusion, which provides that St. Paul "won't cover *loss* that results from . . . commissions . . ." (emphasis added). Holland's "damages" argument is wrong because the specific type of "damages" that the Bloughs seek from Holland is irrelevant to the exclusion's application. Rather, so long as the underlying complaint alleges "*loss* that results from . . . commissions . . .", the exclusion applies

and there is no potential for coverage.[2] Here, *all* loss is alleged to result from Holland's practice of charging commissions on both the lot and the home, rather than the lot alone. That conduct forms the basis of all claims against Holland, and the Commissions Exclusion therefore applies. [3]

Holland's reliance on *Pacific Ins. Co. v. Burnett Title, Inc.*, 380 F.3d 1061 (8th Cir. (Minn.), 2004), in connection with its "damages" argument, is also misplaced. The *Burnett* court was not asked to determine whether the underlying complaint alleged *loss* resulting from commissions. The insurance policy at issue in *Burnett* did not cover "return of fees" for professional services, but it potentially covered other damages. The *Burnett* court therefore analyzed whether attorneys' fees sought in the underlying case constituted "damages" that were separate and apart from the requested return of fees. Whether attorneys' fees or any other requested relief constitute "damages" has no bearing whatsoever on the application of the Commissions Exclusion here. The Commissions Exclusion is not simply for "return of fees," but applies to *any loss* that results from commissions. The loss here is clearly alleged to result from Holland's commission practices and conduct, just as this court found in *Aspen Realty*.

### 2. The Bloughs' ICPA Claim Alleges Loss Resulting From Commissions

The Bloughs' ICPA claim, contrary to Holland's assertions, does not allege anything other than loss resulting from Holland's commissions. Certainly, the Bloughs make conclusory allegations that track the statutory language of the ICPA. They allege that Holland violated the

---

[2] The distinction between "loss" and "damages" is further highlighted by the Policy's coverage grant. There, St. Paul agrees to pay amounts "any protected person is legally required to pay as damages for covered loss that . . ." (emphasis added). Damages and loss are thus separate concepts, and it is the *loss* that is the key to triggering both the coverage and the exclusions involved here.

[3] The *Aspen Realty* Court, in applying the Commissions Exclusion to an almost identical set of underlying pleadings, clearly rejected the "damages" argument Holland advances. The claimants in *Aspen Realty* similarly sought recovery of attorney's fees, interest and "damages." The *Aspen Realty* Court correctly determined that where the case centers around the insured's commission, as it does here, the exclusion applies. 2006 WL 4005573 at *4.

ICPA by "the advertising of goods or services with intent not to sell them as advertised and engaging in any act or practice which is otherwise misleading, false, and/or deceptive to the consumer." But the factual predicate for these conclusions, like the predicate for all other claims alleged, is Holland's alleged practice in requiring the payment of commissions on both the lot and the home. The Bloughs' pleadings include no factual allegations of misrepresentations other than those forming the basis of the alleged commission scheme.[4]

Apparently recognizing that the Blough Litigation is based entirely on Holland's alleged commission-charging practices, Holland also advances an "ambiguity" argument in an attempt to avoid application of the Commissions Exclusion. The insured in *Aspen Realty* advanced the very same argument, asserting that the Commissions Exclusion is ambiguous. (Defendant's Response to Plaintiff's Summary Judgment Motion of August 28, 2006, Case No. 1:05-CV-00355-MHW, Docket No. 17, 10/10/06, p.7). The *Aspen Realty* court obviously rejected that ambiguity argument, finding that:

> . . . the whole case centers around the commissions charged on the lot and on the house to be built. Therefore, there can be no dispute that the portion of the policy which excludes coverage for any loss resulting from commissions of real estate professional services squarely applies . . .

2006 WL 4005573, *4. The exclusion was reasonably susceptible to only one interpretation when the Court found it applied in *Aspen Realty*, and it is reasonably susceptible to only one

---

[4] In advancing its "misrepresentation" argument, Holland also misstates the *Aspen Realty* decision. In *Aspen Realty*, the court found that application of the Commissions Exclusion did not result in "illusory" coverage. Magistrate Judge Williams noted that there are several situations where insurance coverage *would* apply to a real estate agent's conduct that is unrelated to commissions. In that regard, the court mentioned a hypothetical situation in which a buyer was suing a seller's real estate agent for misrepresenting the property in the transaction. The court was clearly referring to misrepresentations *unrelated to commissions*. 2006 WL 4005573 at *5. That is certainly not the situation alleged in the Bloughs' pleadings, where all claims are related to Holland's alleged commission practices.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT - 5**

interpretation here. See *AMCO*, 101 P.3d at 232 (Idaho, 2004) (ambiguity only exists if contract term is reasonably susceptible to more than one interpretation). [5]

Moreover, the *Aspen Realty* court ultimately made no distinction between counts of the underlying complaint remaining at the time of summary judgment in the coverage action and counts previously dismissed from the underlying litigation. As Holland points out in its Response, the original complaint against *Aspen Realty* included claims for violations of the ICPA and RESPA, although those claims no longer remained at the time the coverage action was decided. Nevertheless, in holding that St. Paul had no duty to defend the underlying case against Aspen Realty *from its inception*, the court obviously determined that there was no potential coverage for the ICPA claim previously dismissed. Similarly, there is, and was, no potential coverage for the almost identical ICPA claim here.

### 3. Alleged Ethics Code Violations Do Not Create Potential Coverage

The Bloughs' reference to the National Association of Realtors ("NAR") Ethics Code is also irrelevant to the application of the Commissions Exclusion. Despite Holland's description of the purported ethics code violations as a "claim," they are nothing of the sort. The Bloughs' current pleading contains three counts, purportedly asserting causes of action for violations of the Sherman Act, Idaho Code §48-101 and the ICPA. The Bloughs do not assert any cause of action for "ethics code violations," even if such a cause of action existed.[6]

---

[5] Holland's citation to *St. Paul Fire & Marine Ins. Co. v. Land Title Services, Inc.*, 483 F.Supp.2d 745, 746 (E.D. Wis., 2007) is misleading, as the *Land Title* court did not find that the Commissions Exclusion was ambiguous. The federal district court declined to exercise jurisdiction to issue declaratory relief, instead deferring certain coverage questions to Wisconsin's state courts. The district court therefore stayed the action, and let a state court determine various issues, under Wisconsin law, in the quite different factual situation involved there. 483 F.Supp. 2d at 751.

[6] While the Bloughs seek a declaration that Holland's actions represent a conflict of interest and violate the NAR Code of Ethics, that relief does not constitute "damages," which the Policy defines as "compensatory damages imposed by law." A declaration simply is not "compensatory damages imposed

If the Bloughs did assert some novel action for "violation of the NAR Ethics Code," as Holland seems to think is alleged here, that action, like all of the others in the Blough Litigation, would be based on Holland's alleged commission-related practices. The Bloughs allege no facts related to supposed ethical violations other than the facts upon which they base all of their other claims - Holland's alleged commission charges on both the lot and the house.

### D.     The Policy's Anti-Trust Exclusion Applies

Holland does not dispute that the Policy's Anti-trust Exclusion applies to the Bloughs' claims for purported violations of the Sherman Act and Idaho Code §48-101. Thus, Holland's only argument with respect to this exclusion is that it does not apply to the Bloughs' ICPA claim. Holland fails to recognize, however, that the Bloughs' ICPA claim is for alleged violations of a law that, according to the Bloughs' allegations, prohibits restraint of trade conduct. The exclusion therefore applies to the ICPA claim, as well as the other claims alleged.

Holland's argument regarding the Anti-trust Exclusion is predicated on the fact that a prior version of the exclusion – a version that is not a part of the Policy at issue – made reference to "consumer protection laws." The exclusion that is part of this Policy does not contain that specific reference to "consumer protection laws." In a leap of logic, Holland therefore asserts that the Policy must always provide coverage for *any* violation of any consumer protection law, regardless of whether that law also governs restraint of trade. Holland's argument is contrary to the language of the exclusion.

---

by law." Therefore, even if the request for this declaration somehow did not fall within the ambit of the Commissions Exclusion, it would not serve as an independent basis for finding a duty to defend. In the absence of "damages," the purported ethics code allegations do not amount to a "claim" or "suit" under the Policy, as both require that there be a request for covered "damages."

The Policy's Anti-trust Exclusion provides that St. Paul "will not cover loss that results from any actual or alleged violation of any securities, anti-trust or restraint of trade laws." The exclusion is not, by its terms, limited to specifically named statutes or laws. Rather, it applies to *any* law that prohibits, or provides remedies for, anti-trust or restraint of trade behavior. Here, the Bloughs allege that Holland violated the ICPA through conduct that allegedly constitutes anti-trust or restraint of trade. Specifically, they allege in Count III of their current pleading that:

> 54. The Defendant entered into a *contract, combination, or conspiracy* which was designed to maintain an exclusive listing for undeveloped lots in its subdivisions, to limit the number of builders who could build in the subdivisions, and to not allow the sale of lots without also requiring a commission on the houses to be built on the lots.

(Blough Amended Complaint, ¶54) (emphasis added).

The Bloughs' "contract, combination, or conspiracy" allegations track, almost verbatim, the language of the Sherman Act, which declares illegal every "contract, combination, . . . or conspiracy, in restraint of trade or commerce." (*Id.*, ¶27). It is an allegation of restraint of trade and the Bloughs contend that the alleged conduct violates the ICPA. The Bloughs therefore seek to use the ICPA as a "restraint of trade" law in order to obtain recovery from Holland. The Anti-trust Exclusion squarely applies to the Bloughs' ICPA claim in this specific situation.

### E. St. Paul's Reservation of Rights and the Policy's Fraud Exclusion Cannot Create Coverage Where None Exists

Holland bases another of its arguments on the language of St. Paul's September 2005 reservation of rights letter, contending that the statements in that letter somehow create a potential for covered liability. (Response, p. 5) The argument is meritless, though, as potential for liability that is covered by an insurance policy is not created by an insurer's reservation of

rights to deny coverage.[7] Rather, the potential for coverage is determined by examining the allegations of the complaint. *AMCO*, 101 P.3d at 231.

Holland's attempt to create coverage based on the Policy's "criminal, dishonest, fraudulent and wrongful acts" exclusion is equally disingenuous. Holland notes that the exclusion does not apply to St. Paul's duty to defend until it has been determined that the wrongful conduct was committed. Holland then takes another enormous leap of logic, contending that St. Paul must therefore have a duty to defend any such claim, whether or not other exclusions apply. St. Paul has not moved for summary judgment based on the Policy's fraud exclusion. St. Paul certainly reserved its rights to rely on that exclusion to deny coverage should facts establish its application. Nevertheless, St. Paul's agreement that the fraud exclusion does not initially apply to its duty to defend in no way *creates* a duty to defend otherwise non-covered claims.

### III. ST. PAUL IS ENTITLED TO REIMBURSEMENT

#### A. Reimbursement of Defense Costs Is Appropriate in the Absence of a Duty to Defend

Once again, the parties agree that, under Idaho law, an insurer has no duty to defend an insured against a lawsuit when there is no potential for liability covered under the policy. No Idaho appellate court, however, has considered an insurer's right to reimbursement of defense costs paid when it had no duty to defend the lawsuit from its inception. As demonstrated in the Memorandum, many courts from other jurisdictions have ruled that insurers are, indeed, entitled

---

[7] Moreover, Holland omits reference to specific statements in St. Paul's reservation of rights letter, pursuant to which St. Paul specifically advised Holland that (1) the Policy does not cover loss resulting from Holland's fees and commissions; and (2) the Policy does not cover loss that results from actual or alleged violation of anti-trust and restraint of trade laws. (Schultz Aff., Exhibit 1, p. 7).

to reimbursement in these situations. (Memorandum, p. 14). Holland has not provided any persuasive argument that Idaho courts should not follow this very reasonable rule.

Holland's reliance on one out-of-jurisdiction decision, *General Agents Ins. Co. of Amer., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d (Ill., 2005), is unavailing, as *General Agents* certainly does not reflect the majority view on this issue. *See United Nat. Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir. (Ohio), 2002) (noting the "general rule" that a reservation of rights to reimbursement is enforceable where the insurer expressly reserves the right and provides specific notice of the possibility of reimbursement). Moreover, Holland's statement in its Response that "Idaho has, in essence, adopted the logic expressed eloquently by the Illinois Supreme Court," is quite misleading. To be clear, Idaho courts have not adopted the Illinois Supreme Court's decision in *General Agents*. Contrary to Holland's suggestion, no Idaho appellate court has even remotely followed the *General Agents* approach.[8]

### B. St. Paul's Reservation of Rights Letter Clearly and Unambiguously Reserved Its Right to Seek Reimbursement

Apparently recognizing that the weight of case law authority throughout the country supports an insurer's right to reimbursement of defense costs, Holland resorts to attacking St. Paul's reservation of its right to such reimbursement. In doing so, Holland misstates the facts in the record, makes statements unsupported by *any* facts, and attempts to create ambiguities where none exist.

---

[8] Holland also cites an Idaho state trial court opinion, *Western Comm. Ins. Co. v. Precision Craft, Inc.*, which actually supports St. Paul's reimbursement right. The state court trial judge in *Precision Craft* recognized that an insurer that did not have a duty to defend a suit "would have a colorable" complaint for the repayment of expended funds. *See Precision Craft, slip op.*, p. 2. There, the court determined that the insurer had a duty to defend until summary judgment was granted in the coverage action, so no reimbursement was allowed. Had the court determined that no duty to defend ever existed, the insurer would have had a claim for reimbursement.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 10**

BOI_MT2:673802.1

Holland has not offered any evidence to dispute the facts set forth in the Affidavit of Cindy Schultz, submitted in support of St. Paul's Motion ("Schultz Aff."). The record shows that in the course of reserving its rights, St. Paul allowed Holland to select independent counsel for its defense of the Blough Litigation, and Holland therefore selected the law firm of Hawley, Troxell, Ennis & Hawley, LLP (the "Hawley Law Firm") as its defense counsel. (Schultz Aff., ¶11) Throughout the course of the Blough Litigation, Holland and the Hawley Law Firm conducted Holland's defense, while keeping St. Paul representatives informed of the status and the defense strategy that Holland and the Hawley Law Firm recommended. *Id.*, ¶12. Without submitting any factual support, Holland now asserts in its Response that it did *not* obtain independent counsel, did *not* take control of the litigation, and that its defense firm was in fact selected by St. Paul. (Response, p. 18). Holland's assertions must be rejected, as they are unsupported by any facts in the record.

Holland's next attempt to discredit St. Paul's reservation of rights letter – Holland's ambiguity argument – is also belied by the facts. Regardless of Holland's attempt to knit-pick at the language of the letter, St. Paul clearly advised Holland that it was reserving its rights to seek reimbursement of defense expenses it paid. (Schultz Aff., Ex. 1, p. 8). Holland offers no authority for its contention that St. Paul's reservation letter had to use the phrase "potential coverage" when it reserved its right to reimbursement. This is understandable because, to St. Paul's knowledge, no such case authority exists. Holland's hair-splitting is simply a last-ditch effort to avoid its responsibility to pay for the defense of claims that were never even potentially covered under the Policy.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 11**

## IV. CONCLUSION

For the reasons discussed in this Reply and in St. Paul's Memorandum, the allegations in the Blough Litigation demonstrate no potential for liability covered under the Policy. The allegations made in the Blough Litigation at its inception similarly demonstrated no potential for coverage. Therefore, St. Paul is entitled to a declaration that (1) it has no duty to defend or indemnify Holland against the Blough Litigation, and (2) St. Paul is entitled to reimbursement of all expenses it has paid in Holland's defense.

DATED this 27th day of December, 2007.

ARONBERG, GOLDGEHN, DAVIS & GARMISA

MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED

By /s/ Larry C. Hunter
Larry C. Hunter – Of the Firm
Attorneys for Plaintiff St. Paul Fire &
Marine Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2007, I caused a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED ON NOVEMBER 16, 2007** to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Jeffrey A. Thomson
ELAM & BURKE, P.A.
251 E. Front St., Suite 300
P. O. Box 1539
Boise, Idaho 83701
Facsimile (208)384-5844

_____
Larry C. Hunter