IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE CO., ) | |
| ) | |
| Plaintiff, ) | Case No. CV07-390-S-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| HOLLAND REALTY, INC., ) | |
| ) | |
| Defendant. ) | |
| ──────────────────────────────────) | |

Pending before the Court in the above-entitled matter is Plaintiff's motion for summary judgment. The parties have filed responsive briefing and the matters are now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a declaratory judgment action brought by Plaintiff, St. Paul Fire & Marine Insurance Company ("St. Paul"), against Defendant, Holland Realty, Incorporated ("Holland"). St. Paul provided real estate liability insurance to Holland effective July 19, 2005 through July 19, 2006. During the coverage period, Holland was involved in a lawsuit filed by Curtis and Gwendolyn Blough (the "Bloughs"). At issue in this case is whether St. Paul had a duty to defend and indemnify Holland in the lawsuit.

The Blough's suit originated in August of 2005 when Holland was named as a defendant in a class action entitled Robert Bafus and Renae Bafus, Individually and as members and Representatives of a Class of Similarly Situated Persons v. Aspen Realty, Inc. d/b/a Coldwell

MEMORANDUM ORDER - Page 1
08ORDERS\ST.PAUL_SJ.WPD

<u>Banker-Aspen Realty, et al.</u>, Case No. CV 04-121-S-BLW ("Bafus Case").[1]  The complaint against Holland alleged violations of the Sherman Act and Idaho Competition Act,  Idaho Code § 48-101 *et seq.*  That complaint was later amended to include violations of the Idaho Consumer Protection Act, I.C. § 48-601 *et seq.* ("ICPA") and the Real Estate Settlement Procedures Act ("RESPA").

A district court then severed the Bloughs and Holland from that case, dismissed the RESPA claims, and requested the Bloughs file their own cause of action.  The Bloughs filed an amended complaint ("Blough Amended Complaint") against Holland alleging violations of the Sherman Act, the Idaho Competition Act, and the ICP.  The Bloughs seek damages, including a refund of the commission they were charged by Holland when they purchased a lot, as well as attorney fees and costs.  This underlying litigation will be collectively referred to as the "Blough Case."

The events giving rise to the Blough Case are as follows.  The Bloughs sought to buy a lot of land in the Treasure Valley where they could build a home.  They selected a lot in the Baldwin Park subdivision and learned that Holland was the exclusive listing agent for the sale of undeveloped lots in the subdivision.  Holland told the Bloughs that they could not buy and pay a commission on the lot only.  Rather, Holland said that the Bloughs were required to purchased and pay the commission on the lot that included the cost of a home constructed on it.

Thereafter, the Bloughs paid a commission to Holland which was based upon the value of the lot as well as the completed home.  The commission charged on the completed home was based on the home contract purchase price rather than the amount actually spent to build the home.  The Bloughs did not pay the full contract price because they were able to do some of the work themselves.  Because of this, the Bloughs claim that they were forced to pay a commission on the cost of their own work.  This means while the commission on the lot should have been $1,425.00, the actual commission paid by the Bloughs was $6,486.81.  According to the Bloughs, the inflated cost of the house also resulted in additional damages by increasing the costs of taxes, loan origination fees, and insurance.

---

[1] The Bloughs were part of the Plaintiffs' class.

MEMORANDUM ORDER - Page 2
08ORDERS\ST.PAUL_SJ.WPD

At the time the Blough Case was filed, St. Paul insured Holland with a Real Estate Professional Services Liability Protection Policy (the "Policy").  In a reservation of rights letter dated September 23, 2005, St. Paul agreed to pay for Holland's defense of the Blough Case.  On November 30, 2007, the district court granted Holland's motion for summary judgment and dismissed all causes of action in the Blough Case except for the alleged violation of the ICPA.  See Curtis and Gwendolyn Blough v. Holland Realty, Inc., Case No. CV-06-059-S-BLW (D. Idaho Nov. 30, 2007) (Memorandum Decision and Order).

St. Paul initiated the instant action seeking a declaratory judgment that it has no duty to defend or indemnify Holland in the Blough Case.  St. Paul now moves for summary judgment arguing that the Blough Amended Complaint is limited to allegations of antitrust violations and improperly charged commissions that are excluded from the Policy.  It also argues that it is entitled to reimbursement from Holland for all amounts it paid in defense of the Blough Case.

Holland responds, in essence,  that there are genuine issues of material fact because it is unclear whether the policy exclusions apply to the allegations in the Blough Case.  Holland argues that there is a dispute over: (1) whether the nature of damages sought by the Bloughs are a result of fees and/or commissions; (2) whether the ICPA claims are covered by the policy; and (3) whether St. Paul is entitled to reimbursement of defense cots under its reservation of right letter.

### STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. At 323.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

---

[2] See also, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is no genuine issue for trial.  If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

### St. Paul's Motion for Summary Judgment

St. Paul asserts that it is entitled to summary judgment because the Policy it issued to Holland does not provide coverage for the allegations contained in the underlying Blough Case on two grounds: 1) the Amended Complaint in the Blough litigation allege only claims for violation of antitrust and restraint of trade laws, and the Policy excludes coverage for loss that results from actual or alleged violations of such laws; and 2) any loss from the Blough litigation would result from Holland's fees, commissions or other charges for its services, and the Policy does not afford coverage for such loss.  (Pl.'s Mot. for Summary Judgment, Docket No. 11, p. 6).  St. Paul seeks a declaratory judgment in its favor finding that it has no duty to defend, that is has no duty to indemnify, and that it is entitled to be reimbursed for the defense costs it has expended so far.

As a district court exercising diversity jurisdiction, this Court must apply state substantive  law.  Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1094 (9th Cir. 2004) (citations omitted).  Because the insurance policy was issued in Idaho, the Court must apply Idaho law.  See, e.g., Industrial Indem. Ins. Co. v. United States, 757 F.2d 982, 985 (9th Cir. 1985) ("Idaho has adopted the Restatement rule that the law governing interpretation of a contract is the local law of the state that has 'the most significant relationship to the transaction and the parties.' ").

Under Idaho law, an insurer's duty to defend and indemnify are separate duties.  Hoyle v. Utica Mut. Ins. Co., 48 F.3d 1256, 1264 (Idaho 2002).  The duty to defend is broader than the duty to indemnify.  Id.  "The duty to defend arises upon a filing of a complaint whose *allegations*, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy." Id. at 1260-61 (emphasis added).  When the complaint reveals no potential liability for purposes of the duty to defend, there can be no duty to indemnify.  Id. at 1264.

Whether St. Paul had a duty to defend rests on the allegations in the Blough Amended Complaint and the Policy.  If the Complaint contains allegations against Holland that the Policy potentially covers, then St. Paul has a duty to defend and indemnify.  However, if the Complaint

alleges violations not even potentially covered by the Policy, then no duty to indemnify or

defend exists and summary judgment should be exercised in favor of St. Paul.

**1.      Trade laws policy exclusion.**

St. Paul argues that it has no duty to defend or indemnify Holland against the Blough

Case because the Policy excludes alleged violations of antitrust and restraint of trade laws.  (Pl.'s

Mot. for Summary Judgment, Docket No. 11, p. 6).

In the Policy, under "exclusions," it provides:

> **Violation of trade laws.**  We won't cover loss that results from any actual or alleged violation of any securities, anti-trust, or restraint of trade laws.

(See Exhibit A, St. Paul's Complaint for Declaratory Judgment, Docket No. 1, filed September

17, 2007).  The reasoning behind the insurance industry's exclusion of coverage for violations of

trade laws is that such violations are viewed as deliberate acts, not accidental or inadvertent,

which takes the conduct out of the category of calculable risk.  See Curtis-Universal, Inc. v.

Sheboygan E.M.S., Inc., 43 F.3d 1119, 1125 (7th Cir. 1994).

There were four original claims alleged in the underlying Blough Case which formed the

basis for Holland's request for coverage under the Policy.  The first claim was brought under the

Sherman Act, the second under the Idaho Competition Act, which is patterned after the federal

Sherman Act, the third under the ICPA, and the fourth under RESPA.[3]  Aside from the RESPA

claim, the allegations contained in the Amended Complaint expressly assert restraint of trade,

price fixing, and anti-trust violations of state and federal law, which are the type of claims that

the policy expressly excludes coverage.

Despite the policy language, Holland argues that anti-trust exclusion in the Policy does

not cover the ICPA claims.[4]  (Response to Pl.'s Mot. for Summary Judgment, Docket No. 15,

filed December 10, 2007, p. 3).  Holland also argues that the Policy is ambiguous concerning

whether the ICPA claims are excluded.  Id.

---

[3] The Sherman Act, Idaho Competition Act, and RESPA claims have since been dismissed. The ICPA claim is the only claim that has survived summary judgment.  This cause of action is currently stayed pending appeal on the other claims.

[4] Holland appears to concede that the Sherman Act and Idaho Competition Act claims are included in the Policy's trade exclusion.

MEMORANDUM ORDER - Page 6

The policy language forms the basis for Holland's arguments. Holland contends that because the Policy's trade exclusion provision was modified, the terms were broadened to provide coverage for the ICPA claim.

The exclusion originally read:

> **Violations of Trade or Consumer Protection Laws.** We won't cover loss that results from any actual or alleged violation of any securities, anti-trust, restraint of trade, unfair or deceptive trade practices, unfair competition, or *other consumer protection law*.

(Parks Aff. in Support of Response to Pl.'s Mot. for Summary Judgment, Docket No. 16, Ex. 1, p. 35) (emphasis added). Before the Bloughs brought suit, the exclusion was modified to:

> **Violation of trade laws.** We won't cover loss that results from any actual or alleged violation of any securities, anti-trust, or restraint of trade laws.

Holland contends that because the consumer protection language was omitted, the Policy now covers violations of consumer protection laws or, at the very least, the modified language creates ambiguity in the policy terms.

The Idaho Supreme Court has held that "a[n] [insurance] policy provision is ambiguous if it is reasonably subject to different interpretations." Purdy v. Farmers Ins. Co. of Idaho, 65 P.3d 184, 186-87 (Idaho 2003). "When determining whether a particular provision is ambiguous, the provision must be read within the context in which it occurs *in the policy*." Id. at 187 (citations omitted) (emphasis added).

Under the circumstances presented by the claims arising out of the Blough Case, it is clear that the ICPA claims are related to violation of trade laws. The Bloughs allege that Holland "entered into a....conspiracy which was designed to maintain an exclusive listing for undeveloped lots,.....and to not allow the sales of lots without also requiring a commission on the houses to be built on the lots." (Ex. 1, Parks Aff., p.14). These alleged misleading and deceptive practices by Holland formed the basis of the ICPA claim. Furthermore, as the Policy currently reads, the trade exclusion unambiguously applies to alleged violations of the ICPA. The ICPA's purpose is to protect consumers against unfair methods of competition and unfair or deceptive trade practices. See I.C. § 48-601. As such, this fits squarely within the Policy's anti-trade laws exclusion.

The Court will grant summary judgment in favor of Plaintiff St. Paul on the ground that the exclusion from coverage for violations of restraint of trade laws applies. Because the Court's

decision only applies to the alleged violations a trade laws, and not the RESPA claim, the Court will also address the alternative argument made by St. Paul in support of its motion for summary judgment.

**2.      Loss of commissions exclusion.**

St. Paul's second argument is that it has no duty to indemnify or defend Holland against the Blough Case because the Policy excludes coverages for any loss resulting from commissions on real estate professional services.  (Pl.'s Mot. for Summary Judgment, Docket No. 11, p. 3). St. Paul asserts that because the Bloughs seek the return of alleged improper commissions that Holland collected, any loss alleged in the litigation results from the commissions and is therefore excluded from the policy's coverage.

The Policy's commission exclusion reads:

> **Fees, deposits or commissions.**  We won't cover loss that results from fees, deposits, commissions or other charges for your real estate professional services.

(Exhibit A, Complaint for Declaratory Judgment, Docket No. 1).

Holland argues that the commissions policy exclusion does not apply to the Blough's claims for a variety of reasons.  First, Holland argues that the Bloughs are not only seeking a return of the alleged improperly charged commission, they are also seeking damages resulting from the alleged ICPA violation,  increased costs and fees, attorney fees, and other "damages to be established at trial."  (<u>See</u> Response to Pl.'s Mot. For Summary Judgment, Docket No. 15, p. 8).

Holland's argument is unavailing.  As discussed, the Policy does not include coverage for ICPA violations, so any alleged damage as a result of the ICPA violation is also excluded.[5] Furthermore, the Policy provides that St. Paul "won't cover loss that results...from commissions... ."  The Policy focuses on "loss" and not "damages."  As long as the Complaint alleges any loss resulting from improperly charged commissions, regardless the form, the Policy exclusion applies.

---

[5] This logic also applies to the request for attorney fees, as well.  In its response to the motion for summary judgment, Holland argues that because the ICPA distinguishes attorney fees from other relief granted by the statute, attorney fees are a request for compensatory damages separate from any loss due to the improperly charged commission.  However, because the ICPA claim is excluded, *any* potential relief granted by the statute is also excluded.

The gravamen of the Blough's complaint is the improperly charged commission. The Blough Amended Complaint alleges losses resulting from Holland's practice of charging commission on the lot and home rather than the lot alone. It is from this conduct that the Bloughs allege they have been "damaged." Therefore, the increased costs and taxes, and "other damages to be established at trial" are all a result of the improperly charged commission and the Policy clearly excludes coverage.

Holland further argues that the commission exclusion does not apply to the RESPA claim because it is not based solely on improperly charged commissions rather, certain ethical violations. The Blough Complaint alleged that Holland misrepresented or failed to disclose facts pertinent to the property. (Response to Pl.'s Mot. for Summary Judgment, Docket No. 15, p. 12). However, as with the other claims in the underlying litigation, the basis of Holland's alleged ethical violations were a result of the improperly charged commission. Thus, the Policy did not cover the RESPA claim.

Holland's final argument is that the commission exclusion language is ambiguous and that, therefore, a genuine issue of material fact remains. (Response to Pl.'s Mot. for Summary Judgment, Docket No. 15, p. 13). Holland contends that the Policy does not define what is meant by loss that "results from" fees.[6] Id.

As stated previously, an insurance policy provision "is ambiguous if it is reasonably subject to different interpretations." Purdy, 65 P. 3d at 87. The Court finds that the policy language is unambiguous and applies to the Blough Case. The Policy does not cover "loss...that results from commissions..or fees." Under the circumstances presented in the Blough litigation, the whole case centers around the commissions charged on the lot and how this caused a loss for the Bloughs. Therefore, there can be no dispute that the Policy exclusion for any loss resulting from commissions applies and that there is no genuine issue of material fact.

Therefore, because the Court finds that both the Policy's trade laws and commission exclusion apply to the alleged violations in the Blough Amended Complaint, the Court grants summary judgment in favor of Plaintiff St. Paul. Furthermore, because the policy exclusions

---

[6] Holland bases this argument on a Wisconsin court case. See St. Paul Fire & Marine Insurance Co. V. Land Title Services, Inc., 483 F. Supp. 2d 745, 750 (E.D. Wis. 2007) (leaving the issue of what "loss resulting from fees" means to the state court).

squarely apply to all allegations in the Amended Complaint, no potential for liability exists.  As such, St. Paul does not have a duty to defend or indemnify Holland in the Blough Case.

**3.**          **Whether St. Paul is entitled to reimbursement from Holland.**

Having determined that the exclusions from coverage for violations of trade laws and loss of commissions apply, the Court will now consider whether St. Paul is entitled to recover from Holland defense cots incurred before this adjudication.

A determination of no duty to defend does not necessarily entitle St. Paul to reimbursement of its defense costs.  The Idaho appellate courts have not addressed the specific issue of whether an insurer is entitled to reimbursement of defense costs if the insurer had no potential liability and no duty to defend.

In support of its claim for reimbursement, St. Paul cites established law in other states that support the right of an insurer to reimbursement.   Most courts appear to allow insurers to seek reimbursement pursuant to a unilateral reservation of rights, on the theory that the reservation creates an implied contract when the insured accepts the defense.  Walbrook Insurance Co. v. Goshgarian & Goshgarian, 726 F.Supp 777, 784(C.D. Cal. 1989) (holding that an understanding that the insurer would seek reimbursement and, the insureds' acceptance of the money constituted an implied agreement to the reservation).

In addition to contract theories, some courts have applied the principle of unjust enrichment to find a reimbursement right.  See Buss v. Superior Court, 939 P.2d 766 (Cal. 1997).  In Buss, the California Supreme Court found a reimbursement right existed where the insurer agreed to defend the underlying action, but reserved all of its rights, including the right to be reimbursed for defense costs if it was later determined that there was no coverage under the policy.  Id. at 770.  The court reasoned that the insurance policy did not require the insurer to defend against claims that were not potentially covered because the insured did not pay a premium for defense of such claims and the insurer did not bargain to bear the costs.   Id. at 766.  Explaining that if the insurer was forced to bear costs not bargained for, the insured would be unjustly enriched, thus, a right of reimbursement is implied by law.  Id.

Some courts, however, refuse to allow an insurer to recover defense costs absent an express provision to that effect in the insurance policy.  See General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co., 828 N.E. 2d 1092, 1101 (Ill. 2005) (refusing to permit insurer to

recover defense costs pursuant to a reservation of rights).  In <u>General Agents</u>, the Illinois court declined to follow the logic of other courts, and held that if the insurance policy does not allow a right of reimbursement, then no right exists because the insurer is not permitted to unilaterally modify the policy coverage.  <u>Id.</u>  The court specifically rejected the unjust enrichment and implied agreement theories adopted by other courts.  <u>Id.</u>  Finding the implied agreement analysis contrary to public policy, the Illinois court stated that allowing insurers to modify the contract through a reservation of rights letter "places the insured in the position of making a Hobson's choice between accepting the insurer's additional conditions on its defense or losing its right to a defense from the insurer."  <u>Id.</u>  Rejecting the unjust enrichment theory, the court found that the insured is not unjustly enriched when it accepts defense costs for policy claims not covered because the insurer is protecting itself from a later breach of contract claim.  <u>Id.</u> at 1103.

Holland argues that because St. Paul did not reserve its right to seek reimbursement of defense costs in the insurance policy, St. Paul cannot now seek the right through a reservation of rights letter and urges this Court to follow the approach taken by the <u>General Agents</u> court. Conversely, St. Paul asks the Court to find with the courts who have found a reimbursement right exists if the insurer properly reserved its rights in a letter.

The Court finds persuasive those decisions refusing to allow reimbursement unless an agreement to the contrary is found in the insurance policy as being most consistent with Idaho law.  Idaho law holds that when the duty to defend is triggered, the insurer has a duty to defend the insured until a coverage determination is made.  <u>See</u> <u>Kootenai County v. Western Cas. & Sur.</u>, 750 P.2d 87, 89-90 (Idaho 1988) (stating, "if the insurer believes that the policy itself provides a basis, i.e., an exclusion for noncoverage, it may seek declaratory relief.  However, this does not abrogate the necessity of defending the lawsuit until a determination of noncoverage is made").  This premise was recently confirmed by the Idaho Supreme Court.  <u>See</u> <u>Deluna v. State Farm Fire and Casualty Co.</u>, __P.3d__, WL 2586497 (Idaho 2008) (stating the duty to defend exists so long as there is a genuine dispute over facts bearing on coverage). Therefore, even if the insurer does not believe it has a contractual duty to defend, it must do so or risk a breach of contract claim.

Furthermore, in Idaho, an insurer cannot later change the insurance policy provisions with a reservation of rights letter.  <u>See</u> <u>Mutual of Enumclaw v. Harvey</u>, 772 P.2d 216, 220 (Idaho

MEMORANDUM ORDER - Page 11

1989) (holding that reservation of rights letter can only preserve those rights already agreed to by the parties). The Illinois Supreme court summarized these issues well:

> [W]hen an insurer tenders a defense or pays defense costs pursuant to a reservation of right, the insurer it protecting itself at least as much as it is protecting its insured. Thus, we cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it later determined that an insurer did not owe a defense. *Certainly, if an insurer wishes to retain its right to seek reimbursement of defense costs* in the event it later is determined that the underlying claim it not covered by the policy, *the insurer if fee to include such a term in its insurance contract.*

<u>General Agents</u>, 828 N.E. 2d at 1103 (emphasis added).

Accordingly, this Court finds that St. Paul is not entitled to recover defense costs incurred in defending Holland in the Blough Case. The Policy does not contain a provision for reimbursement of defense costs in the event a court determines St. Paul owes no duty to defend. Thus, St. Paul's reservation of rights letter could retain only those rights and duties listed in the policy. Consequently, St. Paul's request for reimbursement fails.

## Conclusion

The Court finds that St. Paul's motion for summary judgment should be granted in part on the grounds that the Blough Amended Complaint does not contain any potentially covered claims because both the violation of trade laws and commissions exclusions apply. Based on these findings, the court finds that St. Paul has no duty to defend or indemnify Holland in the Blough Case.

The Court further finds that St. Paul's motion for summary judgment is denied in part as to the request for reimbursement of defense costs because St. Paul did not preserve its reimbursement right in the Policy.

## ORDER

Based on the foregoing, and the Court being otherwise fully advised in the premises, it is **HEREBY ORDERED** that:

1)  Plaintiff St. Paul's Motion for Summary Judgment (Docket No. 11) is GRANTED IN PART AND DENIED IN PART consistent with this order.

a) St. Paul has no continuing duty to defend Holland in the Blough Case;

b) St. Paul has no duty to indemnify Holland for any resulting settlement or judgment in the Blough Case;

c) St. Paul is not entitled to reimbursement from Holland for any and all amounts St. Paul paid in the defense of the Blough Case.

DATED:  **August 6, 2008**

Honorable Edward J. Lodge
U. S. District Judge